IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JASEN WASHINGTON, as Biological Father of and Next of Kin to JOURDYN WASHINGTON, A MINOR, DECEASED; DAVISHA GONZALEZ As Biological Mother of and Next of Kin to JOURDYN WASHINGTON, A MINOR, DECEASED; and On Behalf of All Other Wrongful Death Beneficiaries,<br><br>    Plaintiffs,<br><br>v.<br><br>HIGHLAND CHATEAU 5776, LLC, d/b/a/ as HIGHLAND CHATEAU APARTMENTS; MULTI-SOUTH MANAGEMENT SERVICES, LLC and JOHN DOES 1-5,<br><br>    Defendants. | Case No. 2:21-cv-02006-JTF-atc |

**ORDER DENYING DEFENDANTS' MOTION TO INCLUDE CEDRIC CONLEY ON THE JURY VERDICT FORM; GRANTING PLAINTIFFS' FIRST MOTION IN LIMINE TO EXCLUDE ARGUMENT, SUGGESTION, OR INSTRUCTIONS REGARDING COMPARATIVE FAULT AS TO A THIRD PARTY INTENTIONAL ACTOR**

Before the Court are two motions. First is Defendants Highland Chateau 5776, LLC and Multi-South Management Services, LLC's (collectively "Defendants") Motion to Include Cedric Conley on the Jury Verdict Form, filed on August 12, 2024. (ECF No. 124.) Second is Plaintiffs Jasen Washington and Davisha Gonzalez's (collectively "Plaintiffs") First Motion in Limine to Exclude Argument, Suggestion, or Instructions Regarding Comparative Fault as to a Third Party

1

Intentional Actor, filed on August 14, 2024. (ECF No. 133.) Neither party filed a Response in Opposition to either of the motions, and the time to do so has passed. LR 7.2(a)(2). For the following reasons, the Court **DENIES** Defendants' Motion to Include Cedric Conley on the Jury Verdict Form and **GRANTS** Plaintiffs' First Motion in Limine to Exclude Argument, Suggestion, or Instructions Regarding Comparative Fault as to a Third Party Intentional Actor.

## I.  BACKGROUND

As the Court explained before: "[o]n Sunday, November 22, 2020, during an altercation between Cedric Conley, a non-resident, and his ex-girlfriend, Teareny Jones, at the Highland Chateau apartments, Conley retrieved an assault rifle from his niece's apartment and began shooting at his ex-girlfriend. (ECF No. 89-1, ¶¶ 1–3.) A stray bullet struck and killed Plaintiffs' daughter, Jordyn Washington ("Ms. Washington") while she was inside her grandmother's apartment unit. (*Id.* at ¶ 1.) Although disputed by Defendants, in the three years prior to this shooting, the Memphis Police Department was called to the premises in response to at least ninety-four (94) criminal incidents including robberies, assaults, threats of intimidation, murder and carjacking. (ECF No. 114, 2. *See also* ECF No. 106, ¶ 2.)

At the time of the incident, Defendants' management staff had received no formal training relating to security or crime prevention. (*Id.* at ¶ 4.) Defendants did not have a formal crime prevention or security plan and had no written security policies and procedures. (*Id.* at ¶ 5–6.) Prior to Ms. Washington being shot and killed, Defendants retained security guards, but they were randomly scheduled to monitor and patrol the premises. (*Id.* at ¶¶ 8, 12–13.) Even though Defendants hired courtesy officers for property security, Defendants did not keep records to document the officers' patrols or encounters while on the premises. (*Id.* at ¶ 8.) Having

2

discontinued their security services prior to the incident, there were no security officers on the premises at the time of Ms. Washington's death. (*Id.* at ¶¶ 8 & 14.)" (ECF No. 114, 2.)

On January 4, 2021, Plaintiffs commenced this action against Defendants. (ECF No. 1.) The jury trial is currently set for July 14, 2025. (ECF No. 139.) In preparation for trial, the parties have filed proposed jury instructions. (ECF Nos. 125, 127–128 & 130.) The parties have also filed several motions related to the trial, two of which are addressed in this Order.

## II. LEGAL STANDARD

A motion in limine is made before or during trial "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). Neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence expressly provide for the exclusion of evidence before trial. *Luce*, 469 U.S. at 41 n.4. But federal district courts generally "have the power to exclude evidence in limine pursuant to their inherent authority to manage trials." *Hensley v. Methodist Healthcare Hospitals*, No. 12-2436-STA-CGC, 2015 WL 5076982, at *1 (W.D. Tenn. Aug. 27, 2015). Motions in limine allow the court to rule on evidentiary issues prior to trial in order to avoid delay. *Id.* "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of material fact, a motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon*, 718 F.3d at 561. A court will usually only grant a motion in limine if the movant shows that the evidence in question is clearly inadmissible. *See* Hensley, 2015 WL 5076982, at *1 (citing *Indiana Ins. Co. v. General Electric Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004).

3

### III.   DISCUSSION

Defendants argue that whether Conley's act of firing "warning shots" was intentional or negligent is a fact question for the jury. (ECF No. 124, 4, 6.) Defendants also filed their proposed jury instructions, on August 12, 2024, which included a comparative fault instruction based on the non-party Conley's acts. (ECF No. 125, 20.)

Following this, Plaintiffs filed their motion in limine, seeking the exclusion of any argument, suggestion, or instruction regarding apportioning any fault to Conley's the intentional acts. (ECF No. 133, 1.) In their request, they rely on several cases. *See Turner v. Jordan*, 957 S.W.2d 815 (Tenn. 1997); *Limbaugh v. Coffee Medical* Center, 59 S.W.3d 73 (Tenn. 2001); *Cumberland Trust and Inv. Co. v. Genesis Learning Centers*, No. 3:07-0799, 2010 WL 2265696 (M.D. Tenn. June 3, 2010); and *Henderson v. Waffle House, Inc.*, No. 3:19-cv-00443, 2020 WL 12893888 (M.D. Tenn. Mar. 12, 2020).

The Court addresses the motions and the respective arguments below.

### A. Allocation of Fault to an Intentional Actor in Tennessee[1]

Plaintiffs' argument that Defendants' negligence cannot be compared with Conley's intentional conduct to apportion fault relies on two conclusions. First, foreseeability of Conley's act is a factual question to be determined by a jury. (ECF No. 133, 2–3.) The Court agrees that the issue of foreseeability is question of fact for the jury. *See Richardson v. Trenton Special School* District, No. W2015-01608-COA-R3-CV, 2016 WL 3595563, at *5–7 (Tenn. Ct. App. 2016).

Second, the fact that Conley is not a party in the case. The Tennessee Supreme Court first considered the issue of whether a defendant's negligence should be compared with a non-party's

---

[1] "Where, as here, [the Court's] subject matter jurisdiction is based on diversity of citizenship, [the Court] appl[ies] the substantive law of the forum state." *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422 (6th Cir. 2019) (citing *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012)).

intentional act in *Turner v. Jordan*. 957 S.W.2d 815, 821 (Tenn. 1997). In that case, the non-party patient assaulted the plaintiff nurse after the defendant psychiatrist discharged the patient, despite a previous diagnosis of dangerousness. *Id.* at 817. After the attack, plaintiff sued defendant, alleging that it was defendant's duty to prevent patient's foreseeable and intentional act. *Id.* at 821. In holding that a defendant's negligence may not be compared with foreseeable intentional acts of a non-party in determining the extent of liability, the court stated:

> [T]he conduct of a negligent defendant should not be compared with the intentional conduct of another in determining comparative fault where the intentional conduct is the foreseeable risk created by the negligent tortfeasor. As other courts have recognized, comparison presents practical difficulties in allocating fault between negligent and intentional acts, because negligent and intentional torts are different in degree, in kind, and in society's view of the relative culpability of each act. Such comparison also reduces the negligent person's incentive to comply with the applicable duty of care. Moreover, while a negligent defendant may, of course, raise a third party's intentional act to refute elements of the plaintiff's negligence claim such as duty and causation, fairness dictates that it should not be permitted to rely upon the foreseeable harm it had a duty to prevent so as to reduce its liability.

*Id.* at 823.

The Tennessee Supreme Court again confronted this issue in *Limbaugh*, where a nursing home's assistant assaulted an elderly resident. 59 S.W.3d at 86. Unlike the plaintiff in *Turner*, the *Limbaugh* plaintiff sued both the negligent actor (the nursing home) and the intentional actor (the nursing assistant), claiming that the nursing assistant had a history of violence, and the nursing home had negligently failed to take sufficient precautionary measures to prevent the resident's injuries. *Id.* at 77. Under those circumstances, the court ruled that the nursing home owed a duty of reasonable care to protect its residents from foreseeable harms and the assault by the assistant was foreseeable. *Id.* at 80. Although expressing adherence to the principles established in *Turner*, the *Limbaugh* court found it important that the negligent nursing home and the intentional acting

5

nursing assistant were named defendants. Both the nursing home and the nursing assistant were found to be jointly and severally responsible for plaintiff's injuries.[2] *Id.* at 87. The court reasoned that, "in the context of a negligent defendant failing to prevent foreseeable intentional conduct, the joint liability rule 'is a very reasonable and just rule of law which compels each to assume and bear the responsibility of the misconduct of all,'" when negligent and intentional actors are named in a complaint. *Id.*[3]

The instant case is more akin to *Turner* than *Limbaugh* because the Plaintiffs here only sued the negligent actor.[4] Conley is not a party in the case. As a result, jury instructions and verdict form in this case will not include comparative fault with respect to Conley's acts. Defendants are prohibited from arguing or suggesting that the jury should compare their alleged negligence with Conley's intentional act to reduce their liability. However, Defendants may raise Conley's acts to refute any elements of negligence, such as duty and causation. *See Turner*, 957 S.W.2d at 823.

Based on the foregoing, Plaintiffs' motion is **GRANTED**.

### B. Applicability of the Doctrine of Transferred Intent in Tennessee

In their Motion, Defendants seek to include Conley's "negligent" act on the jury verdict form, arguing that his act was negligent towards the victim, Ms. Washington. (ECF No. 124, 4.) Alternatively, they argue that even if his act was intentional, the doctrine of transferred cannot apply under Tennessee law. (*Id.* at 4.)

---

[2] Tennessee adopted a modified comparative fault system in 1992 and has generally abolished joint and several liability, with limited exceptions. *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992); s*ee* Tenn Code Ann. § 29-11-107; *see also Messick v. Ruskey*, No. 1:19-CV-45-KAC-SKL, 2022 WL 368813, at *12 (E.D. Tenn. Feb. 7, 2022).

[3] The other two cases cited by the Plaintiffs are not binding on this Court but demonstrate applications or clarifications of *Turner*. See *Cumberland Trust and Inv. Co. v. Genesis Learning Centers*, No. 3:07-0799, 2010 WL 2265696 (M.D. Tenn. June 3, 2010), and *Henderson v. Waffle House, Inc.*, No. 3:19-cv-00443, 2020 WL 12893888 (M.D. Tenn. Mar. 12, 2020).

[4] Plaintiffs also refer to a comment on T.P.I. – Civil 3.50 (2024 ed.) (Comparative Fault, Theory and Effect) in their argument. But this comment again points out that the instant facts are not like the facts in *Limbaugh* because the intentional actor is not a party defendant to the action here.

In his state court criminal case, Conley is charged with thirteen (13) felony counts including charges of first-degree murder and attempted first-degree murder under Tenn. Code Ann. § 39-13-202; felon in possession of a firearm under Tenn. Code Ann. § 39-17-1307; and employment of a firearm with intent to commit a felony under Tenn. Code Ann. § 39-17-1324.[5] Defendants state that none of the current charges required intent as "the culpable mental state" as to the Decedent, Ms. Washington. (ECF No. 124, 5.) Despite this, Defendants go on to explain "various other criminal charges that are potentially applicable that would equate to negligent conduct," allowing apportionment of fault between two negligent actors. (*Id.* (citing Tenn. Code Ann. §§ 39-13-103 (reckless endangerment), 201 (criminal homicide), 212 (criminally negligent homicide), and 215 (reckless homicide).)

While *Turner* is the law in Tennessee regarding comparing fault of the negligent tortfeasor with the intentional conduct of a non-party, it would not apply if the non-party's conduct was instead negligent. *See Conroy v. City of Dickson*, 49 S.W.3d 868, 873 (Tenn. Ct. App. 2001) (holding that gross negligence is still considered within the doctrine of comparative fault). Defendants make this argument in their Motion. (*See* ECF No. 124.) Defendants speculate that the only supported conclusion from the absence of other injuries and bullet holes—for example, in the car that Ms. Jones was trying to repossess—is that "Conley was negligent in firing his firearm as warning shots, but not intentional in causing harm." (*Id.* at 4.) They aver that even if Conley's shooting was intentional, the doctrine of transferred intent would not apply because there are zero civil cases applying it and the doctrine with respect to common law is on "life support in Tennessee with a barely perceptible heart rate." (*Id.* at 4–5 (quoting *State v. Turner*, No. E2016-00651-CCA-

---

[5] *See Simpson v. G4S Secure Solution (USA), Inc.*, No. 12-2875-STA-tmp, 2013 WL 2014493, at *3 (W.D. Tenn. May 13, 2013) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (indicating that courts may take judicial notice of public records and consider them in their rulings).

7

R3-CD, 2017 WL 1830106, at *10 (Tenn. Ct. Crim. App. May 5, 2017).) Last, they argue that whether Conley's action was intentional or negligent is a jury determination. (*Id.* at 6.)

The common law doctrine of transferred intent provides that "a defendant who intends to kill a specific victim but instead strikes and kills a bystander is deemed guilty of the offense that would have been committed had the defendant killed the intended victim." *Millen v. State*, 988 S.W.2d 164, 166 (Tenn. 1999) (citing 2 Charles E. Torcia, *Wharton's Criminal Law* § 146 (15th ed. 1994); 1 Wayne R. LaFave & Austin W. Scott Jr., *Substantive Criminal Law* § 3.12(d) (1986)). However, the first-degree murder statute in Tennessee only "requires the State to prove that the defendant intended to kill a person," not a specific intended victim. *Millen v. State*, 988 S.W.2d 164, 164–65 (Tenn. 1999) (holding that the trial court erred in instructing the jury on transferred intent, but affirming the first-degree murder conviction of a defendant who intentionally fired several gunshots at a specific person but inadvertently killed a random victim near the scene); *see* Tenn. Code. Ann. § 39-13-202(a)(1). The ruling in *Millen* has been expanded to include attempted first degree murder, *see, e.g., State v. Fabian Claxton*, No. W2009-01679-CCA-R3-CD (Tenn. Crim. App., Jackson, Mar. 7, 2011), and attempted second degree murder, *see e.g., State v. Horace Demon Pulliam*, No. M2001-00417-CCA-R3-CD (Tenn. Crim. App., Nashville, Jan. 23, 2002); *State v. Tarrence Parham*, No. W2009-00709-CCA-R3-CD (Tenn. Crim. App., Jackson, July 26, 2010), concluding that the reasoning in *Millen* was equally applicable to those offenses. As such, it is not necessary to consider "transferred intent". What is important is that an individual intended to kill a person. The Complaint alleges that Conley possessed the required intent—he fired a .223 assault rifle from within Highland Chateau Apartments, striking and killing Ms. Washington. (ECF No. 1, 4 ¶¶ 16–19.) (*See also* ECF No. 89-1, 1 ¶¶ 1–3.) Thus, Defendant's motion to include Conley on the jury verdict form for purposes of comparative fault is **DENIED**.

8

## IV.    CONCLUSION

Based on the foregoing, Defendant's motion is **DENIED** and Plaintiff's motion is **GRANTED**. Defendants may raise Conley's acts to refute elements of Plaintiffs' negligence claim, but they are not permitted to argue, suggest or ask that fault be assigned to intentional act of the non-party shooter. They are also not permitted to include the non-party shooter on the jury verdict form for the purposes of comparative fault as to his "negligent" conduct.

**IT IS SO ORDERED** this 25th day of June, 2025.

                                                    *s/John T. Fowlkes, Jr.*
                                                  JOHN T. FOWLKES, JR.
                                                  UNITED STATES DISTRICT JUDGE